Next case, case number 25-4778, Mr. Donald Timm et al. v. Jeffrey G. Ojemann, M.D., et al. Mr. Timm. Good day. May it please the Court, Appellant Donald Timm, appearing pro se. Could you speak into the microphone? Yes. Thank you. Appellant Donald Timm, appearing pro se, and presenting argument today. This appeal concerns a dismissal with prejudice at the 12b6 stage. The second amended complaint alleged that appellants engaged in protected efforts to stop conduct they objectively and reasonably believed could violate the False Claims Act, that Seattle Children's Hospital knew of those efforts, and that after concerns were formally escalated, appellees removed periphery from already scheduled work and later conditioned contractual renewal on acceptance of the disputed practices without providing a legal or regulatory basis. The District Court did not merely conclude that appellees had offered a plausible alternative explanation. It selected that explanation as true, stripped the pleaded adverse acts from the complaint, and dismissed the claim with prejudice before discovery. It did so by treating removal as a natural consequence of appellants' protected position. Raised more than 15 months prior, and by treating Dr. Ojemann's conditional letter as proof that Seattle Children's offered renewal, an appellant simply walked away. Those conclusions depend on resolving disputed facts and competing inferences against the complaint. Appellant therefore asked this Court to vacate the dismissal and remand for further proceedings. Mr. Tim, wasn't periphery the one who terminated the relationship, saying we do not believe continuing our business relationship at this time is appropriate? And so how can the Children's Hospital be at fault there when you were the ones – periphery was the one terminating the relationship? Read in a favorable light to the plaintiff, the letter says that they could not accept the conditions of that renewal offer because they were predicated on protested activity that was given foundation over a year and a half prior. So also the same letter on September 9th, 2022, I wrote that unlicensed Ph.D. providers cannot bill private or government payers qualifying – Would the renewal contract have required your organization to actually work with the University of Washington Ph.D.s? It was never presented to us. The draft was never presented to us. So the complaint states that the renewal contract was in its final renewal stage. After our protected activity escalation reporting the same concern, the appellees slowed down the renewal process, as the complaint says. Is it not correct that you had been previously relieved of having to work with the University of Washington Ph.D.s? No, we had not been previously relieved. That was ongoing during this time and later transitioned away from us already scheduled procedures. All right. And is there an allegation in the second amended complaint that the new contract would have required your organization to actually work with the University of Washington Ph.D.s? There is not an allegation that we would be required to work with them. This case, as far as the False Claims Act retaliation aspect goes, is saying that we proffered a genuinely objectable concern that there was potential fraud against the government and violations of state and federal law that were more than trivial. Counsel, would you like to reserve the balance of your time for rebuttal? I would like to reserve three minutes. I would like to say that the complaint plausibly alleged protected activity, the False Claims Act has broad, very broad language. And as I introduced in a recent 28-J filing for a supplemental authority in Adventist Health of the West v. AbbVie, the panel in that case discusses the broad remedial protections or broad remedial aspects of the False Claims Act and that a narrow view of the False Claims Act can harm persons who genuinely believe in that there are potential false claims. And I think that this case was dismissed prematurely based on inferences that were drawn against the record and there was no chance for discovery to see what actually had occurred. Had the appellees proffered a statutory or regulatory basis at any point during the 15-month period before moving periphery from already scheduled work, which could be seen as an adverse act, that may change the interpretation here. But we're talking about something entirely different. Not only was renewal conditioned on accepting terms of unlicensed practice, which on the appeal I connect to a Department of Justice settlement where persons were using unlicensed practitioner or no practitioner at all to interpret and oversee interoperative neurophysiological monitoring. And the government deemed that material enough to pursue a False Claims Act claim against those people. I believe that the requirements for plaintiff is an objectively reasonable good faith belief. And I believe that we conveyed that. I believe the record supports that. I also believe that dismissal at this stage does not give room for facts to be resolved. I would like to reserve the rest of my time. Thank you, counsel. Thank you. May it please the court. My name is Jeff Cooper Smith. I represent Seattle Children's Hospital and Dr. Jeffrey Ogerman. I'd like to address two primary topics today. One is, did the district court correctly conclude that there was no retaliatory act in this case? And then the second issue is, did the district court correctly dismiss the case with prejudice without leave to amend? Starting with the first one. This is really a legal dispute. There's really no dispute about the facts. As the court has pointed out, there was this exchange of letters on August 30th, 2022 and September 9th of 2022. And those letters are at Supplemental Excerpts of Record, SCR 233 through page 238. Those letters are very clear. Seattle Children's offered Mr. Tim and his company, Periphery, everything they could ever have dreamed of. They were going to get a longer term, a five-year term. And that is alleged at paragraph 147 of the complaint, SCR 333. They get a longer term. They were never, never going to have to work with the UW PhDs, which was actually an outstanding, a longstanding practice dating back from early 2021. That Periphery never had to work with the University of Washington PhDs that they objected to. So Seattle Children's, Dr. Ogerman offers Periphery everything they want. And Periphery says, no, we can't do business under those circumstances. What Periphery was trying to do is police areas of the hospital they had no involvement in. If they want to do that, no one was stopping them from going to complain to the Department of Health or standing outside the hospital with a picket sign or whatever they wanted to do to express that view. But there was a disagreement on that issue. Seattle Children's did not agree that the PhDs were improper. They told Mr. Tim that. They accommodated him by saying, you don't have to work with him anymore. Now, let me just step back for a minute. Mr. Tim has alleged as an act of retaliation that he was, I think, in his words, stripped of cases. That is simply not true. If you look at paragraph 40 in particular of the second amended complaint, and that is at SER 304 to page 305, Mr. Tim specifically alleges that in early 2021, this was just a few months into the contract, the two-year contract, Mr. Tim alleges in that paragraph that there was an issue that came up about working with UW PhDs because UW was sort of scaling back their involvement in this interoperative neuromonitoring procedure. So Seattle Children's was telling Mr. Tim at that time, we want to give you more cases. The original contract was just an overflow contract where Mr. Tim was on a guaranteed payment on I think it was around 50 cases. They wanted to give him a lot more than that. There was an issue about whether he had to work with UW PhDs. He alleges that from that time in early 2021, Seattle Children's Hospital specifically told him that there are a few surgeons at Seattle Children's who prefer to work with UW PhDs. They have longstanding relationships. They feel more comfortable. So Mr. Tim never had those cases. He ended up with, at first, he had an overflow contract which is as needed. He ended up with something like 90 percent of the cases. That was dating from early in the contract period, early 2021. That was the status quo all along. So when he says he was stripped of cases, that is simply not what he alleged. Assuming his allegations as true, which is what the district court had to do, he had, and the district court specifically cited paragraph 40 of the complaint in its order dismissing the case. Mr. Tim had the 90 percent of the cases all along. At the end, they told him you can still have the 90 percent of the cases, but you're going to get a longer contract term of five years. That cannot be retaliation. This is a question of law. Can facts where the purported whistleblower is told you're going to get more than you had before, and he wants even more than that, could that be retaliation? And the answer is going to be clearly no. And that's why the district court was correct in its ruling. I want to pivot for a minute to the dismissal of prejudice because there's a lot of briefing on that issue. So, of course, we all know leave to amend is freely given, but I think a little bit of history is important here. So by the time the district court ruled on the motion to dismiss, we were on complaint number three. The first complaint filed in state court was removed to federal court. They filed a first amendment complaint. We were on the second amendment complaint. Going into the motion to dismiss, Judge Rothstein, unlike I think all the other district judges in this district, had a specific rule that you have to meet and confer, and that's in the record at SER 264. We have to certify that we had met and conferred with counsel, Mr. Tim and his company represented by counsel at that time, that we told them this is the grounds for moving to dismiss. In the record, they said, well, nothing we're going to do. We're not going to amend. Then we filed our motion to dismiss, and they had notice of what our issue was there. They still didn't amend. They could have. Then the court ruled on March 26, dismissing the complaint with prejudice. Now, there's an important thing that happened in the interim. In the record, and this is at SER 58, 84, and 91 through 92, Mr. Tim's lawyer, a gentleman named Eric Siegel, submitted to us a purported Rule 11 motion saying that he had found some new documents. I think they were obtained through a Public Records Act request from the University of Washington. He said, I've got these new documents, and we're telling you, Seattle Children's, you should withdraw your motion to dismiss because this changes everything. We actually briefed in the district court, well, if that's what he had, just amend the complaint. If he's got great stuff, new stuff, nothing stopping him, leave is freely given. He did not try to amend the complaint even after having his documents and admitting it in this purported Rule 11 filing. This is all in the record at the pages I indicated. So what you can't do as counsel is you can't get new material that you think supports your position, decline to amend, and then later claim the district court got it wrong. And in fact, in the record at SER 58 lines 12 to 13, the plaintiff's counsel, Mr. Siegel, specifically said that he deliberately decided not to amend because in his view, the district court, quote, would not welcome it. So he makes a deliberate decision not to amend. He then goes through the motion to dismiss ruling. The court dismisses with prejudice. Now, ordinarily, that would be it. But then he filed a Rule 59e motion seeking to amend the judgment based on newly discovered evidence. And the briefing on that issue in the district court was that there was nothing newly discovered. He'd had this material for two months, and that's in the record in the declaration. The district court concluded that it wasn't newly discovered, but it went further than that. The district court then said, well, I'm going to consider the evidence anyway. And after considering the new evidence, and Mr. Tim has never put anything else forward that would have been the basis for an amendment except for this, district court said I've considered the new evidence. It still doesn't make a difference. And your case is dismissed with prejudice. I'm confirming that. So there's so many bites at the apple here, your honors. There's the three complaints. There's a meet and confer. There's a motion to dismiss. There's the rules, the rule 11 issue that I just described. There's a judge's ruling. There's a Rule 59e. There's no more federal apple. There will be a state apple, so they can go back to state court if this court affirms, which is what we're asking this court to do. They'll go back to state court with their five claims. And one of those claims is identical to the federal retaliation claim. It's brought under the state false claims act, which has the exact same damages they can litigate there. We'll make our arguments, Mr. Tim. And if he has counsel, they'll make their arguments and we'll have it out in the state court. But Judge Rothstein's dismissal of this complaint with prejudice was absolutely correct. And there's no basis to overturn that. If the court has any questions, I'm happy to entertain them. I guess my question is there's a standard. I'm a district court judge normally. And I know there's a standard. I'm going to dismiss a case. I have to do certain things and go through certain factors before I dismiss with prejudice. And I don't see that in the record. I mean, you're piecing things together. You make a compelling argument. But at the end of the day, should the rule be the judge has to apply the standard and we want to see his reasoning or her reasoning for why the case is being dismissed with prejudice? And it's explicit. So we don't have to sort of guess at it. Your Honor, that I think you're referring to the foeman factors. And ordinarily, that's what you'd see. And this is why, Your Honor, I mentioned this whole issue with the rule 11 issue, which is in the record, because what happened here is that counsel for Mr. Tim and his company made a deliberate decision not to seek leave to a man. They admit that's what they did. And so when they do that, I think this changes a lot. And the other thing I'll say, Your Honor, is that I think that you're correct. That is normally what you'd see. But because of the way plaintiff's counsel handled this, the district court was basically being sandbagged with this additional material that they submitted in a rule 59 motion. And the judge, to be absolutely fair, took the time and she said this in her order to consider that evidence. And that is equivalent to the futility analysis, because she said, I looked at these materials and they don't change anything. And by the way, those materials, they really just bore on this question of, are PhDs properly providing these oversight services for intraoperative neuromonitoring? Judge Rothstein had assumed that that was correct for purposes of ruling on these motions. But that issue was neither here nor there. And so the new documents, which are on the record, they're in the record at SCR 66 through 80. They all go to this question of, should PhDs be doing this? And that's sort of beside the point. So that's what Mr. Tim and his lawyer had at the time. He never once, Judge Hinderacker, put together any basis for an amendment, even in all the district court briefing and in briefing before this court, never once said there was some other reason to amend other than these documents. The district judge considered it and her ruling should be affirmed. Thank you, counsel. Thank you. On the point of renewal and that we were guaranteed a five year renewal agreement for counsel here, the complaint says explicitly that senior administrator from Seattle Children's Hospital, Rennell Risely, contacted after I contacted and reached out about an updated contract in late August 2025, stated that Seattle Children's Hospital had assigned new contract negotiators were revisiting terms, including the duration of the contract renewal. These are new events occurring after protected activity within a short proximity. They cannot be considered benign and dismissed with prejudice at this point without looking into the actual facts of the case, which we have. And if Seattle Children's Hospital was looking to affirm their position outside of the incorporated documents that they included, which are breach correspondence where I don't know any company that's going to aggressively, say, accuse a hospital of fraud in open. But I still absolutely listed that billing was a concern about this. It had been ongoing. They did not rebut to that in another letter and say, wait, this is about billing. Nothing like that. They could have introduced the bylaws, which say no people without a license can be on the medical staff or the allied health staff. These are in compliance with the Code of Federal Regulations, Title 42, Subsection 482, 11 and 12. The hospital, not surgeons, are responsible for ensuring compliance with their contractors and vendors. The district court stated that the hospital is merely accommodating plaintiffs and deferring to the surgeons. But it cannot be so under federal statute and it cannot be so under the hospital bylaws, which could have been introduced to contradict us. They have not been introduced to contradict us. And in regard to the 59E evidence, if we believe that the complaint already satisfied each element that was required for pleading at 12B6, adding more facts that in amending again to add those additional facts does nothing at 12B6. Our complaint was to be accepted as true. For example, Exhibit 42-1 was a September, early September letter between Ogiman, Defendant Apelli Ogiman, Esselman and Kinney, discussing that the Children's Medical Staffing Office raised issue with not having licensed providers. This is 10 days before we signed our contract. So that does have some weight behind it. We have a 2019 letter from Greg Kinney, Apelli Kinney, discussing that he's aware that licensure is required and the state has none. On reply, I brought Washington case law in discussing how the state does has exemptions and a lack of an exemption is not an entitlement to practice without a license. Imagine if periphery were reporting a anesthesiologist without a license and the Seattle Children's Hospital leveraged renewal on accepting that that person was fine. This is an analogous scenario, except we were asked to be covering all IOM services. And to counsel's point, we were covering 100 percent of the technologist services and 90 percent of the oversight services. So a stripping of 10 percent of the technologist services following close proximity is meaningful. Mr. Tim, counsel quibbled with your characterization of having been stripped of that 10 percent. Counsel argue says that we weren't entitled to that 10 percent to begin with. So how can you say that you were stripped of that? Certainly, these were already scheduled procedures that contractually once mutually agreed upon could not be revoked unless we broke some part of the contract. Now, again, we're bringing up unlicensed practice. It was not new at the breach. Fifteen months earlier, this was raised. A quality investigation, quality improvement investigation was opened but sat idle. And then when we escalated through a breach after continued incidents, which include patient harm, direct patient harm, we were retaliated against per the complaint. So stripping scheduled work, I'm not talking about an entitlement to future cases. I'm talking about scheduled procedures mutually agreed upon under contract reporting and then them being taken away. Another provider was brought in. Our contract, which had been in negotiation since October 2021, was slowed down. Another vendor went through a whole contract cycle, came in, took our work. And then at the last hour, Dr. Ogiman conditioned renewal, which was not guaranteed for five years. Because if we follow the complaint, Ms. Risely said that those terms were being revisited. Yet five days later, Ogiman's letter comes and offers a new draft renewal. How? No meeting had occurred per the complaint. If no meeting occurred, a meeting of the minds to discuss those newly negotiated terms, what was Ogiman offering? Thank you. Thank you, Mr. Tim. Thank you. Case is submitted.
judges: SMITH, TUNG, Hinderaker